Pruchnick v State of New York (2025 NY Slip Op 50716(U))

[*1]

Pruchnick v State of New York

2025 NY Slip Op 50716(U)

Decided on March 11, 2025

Court Of Claims

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 11, 2025
Court of Claims

Santa Pruchnick, as Administrator of the 
 Estate of TRAVIS ROBINSON, and Individually, Claimant(s)

against
The State of New York, Defendant(s)

Claim No. 142582

Claimant's attorney:
RICKNER PLLC
By: Robert Rickner, Esq.
Defendant's attorney:
HON. LETITIA JAMES
Attorney General for the State of New York
By: Elaine M. Driscoll, Assistant Attorney General

Walter Rivera, J.

The following papers numbered 1-3 were read and considered by the Court on the State's pre-answer motion to dismiss the claim:
Notice of Motion, Attorney's Supporting Affirmation and Exhibits 1
Attorney's Affirmation in Opposition, Memorandum of Law and Exhibits 2
Attorney's Reply Affirmation 3
Notice of Intention to File a Claim
A Notice of Intention to File a Claim was served upon the office of the attorney general on November 22, 2022 (State's Ex. A). The Notice of Intention to File a Claim alleges that on August 25, 2022, during the incarceration of Travis Robinson at Sing Sing Correctional Facility (Sing Sing), Robinson was "involved in an incident at Sing Sing which caused him to fear for his life" (id. at ¶ 5). Robinson then "approached DOCCS staff for protection after the incident, but was told that there was nothing that could be done if Mr. Robinson was unable to identify the person or persons involved in the incident" (id. at 6).[FN1]
 On August 27, 2022, Robinson emailed "his loved ones expressing concern for his safety, stating that he was unable to get protection from the guards, and that he was being labeled a snitch following the August 25 incident. He also told his family that the guards had created a dangerous environment and he was concerned that something extreme may occur" (id. at 7). After receiving the emails, "Robinson's family contacted DOCCS headquarters and the watch commander at Sing Sing, but was told that there was nothing that could be done" (id. at 8). "On August 29 or 30, 2022," Robinson's mother, Santa Pruchnick, received a phone call informing her that her son was in the hospital intensive care unit (ICU) and the family was told that Robinson had attempted to hang himself with his shoelaces and was in critical condition on a ventilator (id. at 9-10). Robinson died after being removed from life support on September 2, 2022 (id. at 11). 
The Notice of Intention to File a Claim alleges negligence, recklessness, deliberate indifference, and intentional conduct by the State in its operation, maintenance, supervision and control of Sing Sing and in the care and custody of the individuals incarcerated at Sing Sing (id. at 3). The Notice of Intention to File a Claim further alleges that, prior to his death, Robinson sustained numerous injuries, including severe pain and suffering, substantial psychological and emotional injuries, fear, embarrassment, loss of enjoyment of life, and violations of his state and federal constitutional rights based on the State's failure to protect him (id. at 12).
Additionally, it is alleged that Pruchnick suffered substantial psychological and emotional injuries stemming from her son's suffering and premature death (id.). 
The caption of the Notice of Intention to File a Claim lists Pruchnick individually and as the "future Administrator" of her son's estate (State's Ex. A).
On August 26, 2024, Pruchnick was appointed as the administrator of Robinson's estate (Claimants' Ex. A).

Claim
On August 28, 2024, a claim was filed with the Court and served upon the office of the attorney general (State's Ex. B; Claimants' Ex. B). In addition to the allegations set forth in the Notice of Intention to File a Claim, the claim alleges that the officers spoke to Robinson in front of numerous other incarcerated people, which made them think that Robinson was an informant or a snitch and that "[t]he stress that Mr. Robinson felt from negligently being labeled a snitch, [*2]the negligent refusal to place him in protective custody, and the negligent refusal of DOCCS staff to address his obvious mental health problems, directly caused his death" (State's Ex. B, ¶¶ 7, 15). The claim also alleges, "[i]n the alternative, Mr. Robinson was killed by the unknown person who was threatening him [Robinson] and DOCCS staff negligently failed to protect him" (id. at 16). Additionally, the claim alleges that Pruchnick lost the support that Robinson would have provided to her "after his release on parole as early as 2029" (id. at 21).
The State moves to dismiss the claim pursuant to CPLR 3211 (a) (2) and (a) (7) and Court of Claims Act §11 (b); and §§ 10 (3) and 10 (3-b).[FN2]
 
The State argues that the Notice of Intention to File a Claim is conclusory and contains general allegations of negligence which fail to indicate the manner in which Robinson was injured and how the State was negligent. Specifically, the State argues that there is insufficient information regarding the alleged incident which caused Robinson to fear for his life, who caused such fear, and whether such person was a State actor. Additionally, the State argues that the Notice of Intention to File a Claim fails to specify how the State failed to protect Robinson from an unidentified person or persons that Robinson feared and how this resulted in Robinson's attempted suicide and subsequent death. Thus, the State maintains that the Notice of Intention to File a Claim does not meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b) and therefore was ineffective to extend the time within which to serve and file a claim under Court of Claims Act §§ 10 (3) and 10 (3-b). Accordingly, the State argues that the claim was untimely served and filed and warrants dismissal pursuant to CPLR 3211 (a) (2) based upon the Court's lack of subject matter jurisdiction. Additionally, the State argues that the aforenoted allegations and causes of action asserted in paragraphs 15, 16 and 21 of the claim are beyond the allegations of the Notice of Intention to File a Claim and are asserted for the first time in the claim. Therefore, the State maintains that those causes of action warrant dismissal as untimely.
Finally, the State argues that the claim, like the Notice of Intention to File a Claim, fails to allege the particular manner in which the State was culpable or negligent and thus the claim does not meet the pleading requirements of Court of Claims Act §11 (b). Accordingly, the State argues that, in addition to warranting dismissal as untimely, the claim warrants dismissal pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. 
Claimants oppose the State's motion and argue that, pursuant to Court of Claims Act § 10 (2), the claim was timely filed and served as a wrongful death claim within 90 days of August 28, 2024, the date of the appointment of Pruchnick as the administrator, and within two years of September 2, 2022, the date of Robinson's death. Accordingly, claimants argue that the State's arguments addressed to the purported insufficiency of the Notice of Intention to File a Claim are irrelevant.
Claimants further argue that, contrary to the State's arguments, the Notice of Intention to File a Claim and the claim are sufficiently specific to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b). Specifically, claimants argue that the manner of the State's negligence is specified in: 1) the State's denial of the requests for protection made by Robinson and his family due to Robinson's fear for his safety; 2) the State's failure to address [*3]Robinson's obvious mental health problems prior to his attempted suicide; and 3) the State's creation of a perception by other incarcerated individuals that Robinson was a snitch or an informant.
In reply, the State concedes that the cause of action for wrongful death is timely under Court of Claims Act § 10 (2). However, the State maintains that the cause of action for wrongful death warrants dismissal on the ground that the claim does not meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b).
The State further argues that Court of Claims Act § 10 (2) is not applicable to the causes of action seeking recovery for Robinson's pain and suffering based upon the State's alleged negligence, recklessness, deliberate indifference, and intentional conduct. Rather, the State argues that Court of Claims Act §§ 10 (3) and 10 (3-b) are applicable to those causes of action. The State further argues that said causes of action warrant dismissal pursuant to those sections of the Court of Claims Act and, as argued in the State's motion papers, pursuant to CPLR 3211 (a) (2) and (a) (7) and Court of Claims Act § 11 (b). Additionally, the State argues in its Reply papers that the there are insufficient factual allegations to state a claim based upon the State's vicarious liability for any intentional conduct of its DOCCS employees. Finally, the State argues that, to the extent that the claim alleges violations of Robinson's state and federal constitutional rights, the Court of Claims does not have subject matter jurisdiction over federal constitutional tort claims and there is no legal basis for imposing a state constitutional tort claim based upon the facts alleged. 

Analysis
Preliminarily, to the extent that the claim alleges violations of Robinson's state and federal constitutional rights, the Court finds that the claim fails to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b). In that regard, the causes of action fail to specify the alleged constitutional violations and the conduct which forms the basis of the alleged violations. Additionally, this Court does not have jurisdiction over federal constitutional tort claims and a state constitutional tort claim will not be implied where claimants may have an adequate remedy at law (see Martinez v Schenectady, 97 NY2d 78, 83-84 [2001]; Brown v State of New York, 89 NY2d 172, 188 [1996]; Lyles v State of New York, 3 NY3d 396 [2004]). 
Accordingly, to the extent that the claim alleges violations of Robinson's state and federal constitutional rights, the State's motion to dismiss those causes of action is GRANTED.
As noted above, the State concedes in its Reply papers that the wrongful death cause of action was timely commenced under Court of Claims Act § 10 (2). The State argues, however, that said cause of action is not sufficiently specific to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b) and therefore warrants dismissal. 
Court of Claims Act § 11 (b) provides that a claim shall state the time when and place where such claim arose, the nature of same, and the items of damage or injuries claimed to have been sustained. The State is not required to ferret out or assemble information that Court of Claims Act § 11 (b) obligates claimants to allege (see Lepkowski v State of New York, 1 NY3d 201, 208 [2003]). Court of Claims Act § 11 (b), however, does not require " 'absolute exactness' " and the " 'guiding principle'. . . is whether the State is 'able to investigate the claim promptly and to ascertain its liability under the circumstances' "(Johnson v State of New York, 231 AD3d 793, 794 [2d Dept 2024] [citations omitted]). 
In the instant case, the Court finds that the claim sets forth the time when and the place where the claim arose, the nature of same, the injuries claimed to have been sustained, the details of the manner in which claimants were injured and enough information for the State to reasonably infer how that State allegedly caused Robinson's wrongful death (see id.). Specifically, the claim alleges that Robinson's wrongful death is allegedly attributable to the State's failure to provide Robinson with the protection that he requested due to the fear he expressed from being labeled a snitch and the State's failure to provide Robinson with appropriate protection and care to address his expressed fear while in State custody. The claim also alleges that the officers spoke to Robinson in front of numerous other incarcerated people, which made them think that Robinson was an informant or a snitch and that "the stress that Mr. Robinson felt from negligently being labeled a snitch, the negligent refusal to place him in protective custody, and the negligent refusal of DOCCS staff to address his obvious mental health problems, directly caused his death" (State's Ex. B, ¶¶ 7, 15). Additionally, the claim alleges, "in the alternative, Mr. Robinson was killed by the unknown person who was threatening him [Robinson] and DOCCS staff negligently failed to protect him [Robinson]," (id. at16). The claim also alleges that Pruchnick lost the support that Robinson would have provided to her "after his release on parole as early as 2029" and the Court finds this to be an element of damages associated with the alleged wrongful death of Robinson (id. at 21). Thus, contrary to the State's arguments, the claim provides a sufficiently detailed description of the particulars to enable the State to investigate and promptly ascertain the existence and extent of its liability for the alleged wrongful death of Robinson (see Kimball Brooklands Corp. v State of New York, 180 AD3d 1031, 1032 [2d Dept 2020]; Sinski v State of New York, 265 AD2d 319, 319 [2d Dept 1999]). The Court also rejects the State's arguments that paragraphs 15, 16 and 21 of the claim warrant dismissal on the ground that they are were raised for the first time in the claim and were not set forth in the Notice of Intention to File a Claim.
Accordingly, the State's motion to dismiss the cause of action alleging wrongful death and the allegations set forth in paragraphs 15, 16 and 21 of the claim is DENIED.
Next, the Court addresses the State's motion to dismiss the claim to the extent that the claim alleges causes of action sounding in negligence, recklessness, deliberate indifference, and intentional conduct. As noted above, the State argues that said causes of action warrant dismissal as untimely under Court of Claims Act §§ 10 (3) and 10 (3-b). In that regard, the State argues that the Notice of Intention to File a Claim does not meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b) and therefore did not extend the time to serve and file a claim under Court of Claims Act §§ 10 (3) and 10 (3-b). Additionally, the State argues that the claim warrants dismissal because it does not meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b).
The service requirements set forth in Court of Claims Act §§ 10 and 11 are jurisdictional in nature and require strict compliance as a precondition of suit against the State (see Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992]). A failure to comply with any of the service provisions is a jurisdictional defect compelling the dismissal of the claim (see Kolnacki v State of New York, 8 NY3d 277, 281 [2007] ["(t)he failure to satisfy any of the (statutory) conditions is a jurisdictional defect"]; Welch v State of New York, 286 AD2d 496, 497-498 [2d Dept 2001]).
Court of Claims Act § 10 (3) provides that a claim of negligence against the State must be served and filed within 90 days after the accrual of the claim, unless within such time a Notice of Intention to File a Claim is served upon the State, in which event the claim shall be served and filed within two years after the accrual of the claim. Court of Claims Act § 10 (3-b) provides that a claim to recover for an intentional tort of a State employee must be served and filed within 90 days after the accrual of the claim, unless within such time a Notice of Intention to File a Claim is served upon the State, in which event the claim shall be served and filed within one year after the accrual of the claim.
With regard to whether a Notice of Intention to File a Claim is sufficiently detailed to meet the requirements of Court of Claims Act § 11 (b), the Second Department recently held in Johnson (231 AD3d at 794 [citations omitted]), that a Notice of Intention to File a Claim " 'should provide an indication of the manner in which the claimants were injured and how the State was negligent, or enough information so that how the State was negligent can be reasonably inferred' " (see also Martinez v State of New York, 215 AD3d 815, 817 [2d Dept 2023]; Rodriguez v State of New York, 8 AD3d 647, 647 [2d Dept 2004]).
In the instant case, the Court has carefully reviewed the Notice of Intention to File a Claim and finds that it is sufficiently detailed to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b) with regard to the allegations of the State's negligence. In that regard, the Court finds that the Notice of Intention to File a Claim sets forth the time when and the place where the claim arose, the nature of same, the injuries claimed to have been sustained, the details of the manner in which claimants were injured and how the State was negligent, or enough information so that how the State was negligent can be reasonably inferred (see Johnson, 231 AD3d at 794).
Specifically, the Notice of Intention to File a Claim sets forth that on August 25, 2022, during Robinson's incarceration at Sing Sing, he was involved in an incident which caused him to fear for his life and that after the incident he asked DOCCS staff for protection, but was told that there was nothing that could be done if he was unable to identify the person or persons involved in the incident (State's Ex. A ¶¶ 5, 6). On August 27, 2022, Robinson emailed his loved ones stating that, after the August 25 incident, he was labeled a snitch and this caused him to be concerned for his safety as he was unable to get protection from DOCCS guards (id. at 7). After receiving the emails, Robinson's family contacted DOCCS headquarters and the watch commander at Sing Sing, but was told that there was nothing that could be done (id. at 8). On August 29 or 30, 2022, Pruchnick received a phone call informing her that her son was in the hospital ICU and the family was told that Robinson had attempted to hang himself with his shoelaces and was in critical condition on a ventilator (id. at 9-10). Robinson died after being removed from life support on September 2, 2022 (id. at 11). The Court finds that the aforenoted allegations of the State's negligence are sufficiently detailed to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b) as there is enough information to reasonably infer that the State's negligence is allegedly attributable to the State's failure to provide Robinson with the protection that he requested due to the fear he expressed from being labeled a snitch and the State's alleged failure to provide Robinson with appropriate protection and care to address his expressed fear while in State custody (see Johnson, 231 AD3d at 794). In that regard, the Notice of Intention to File a Claim provides a sufficiently detailed description of the particulars to [*4]enable the State to investigate and promptly ascertain the existence and extent of its liability (see Kimball Brooklands Corp., 180 AD3d at 1032; Sinski , 265 AD2d at 319). The Court also finds that the Notice of Intention to File a Claim is sufficiently specific to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b) regarding the allegations that Pruchnick suffered substantial psychological and emotional injuries stemming from her son's suffering and premature death (State's Ex. A, ¶ 12).
Thus, the Court finds that, as to the cause of action alleging that the State was negligent, the Notice of Intention to File a Claim extended the time within which to serve and file the claim under Court of Claims Act § 10 (3) and that, as to said cause of action, the claim was timely served and filed on August 28, 2024, within two years after the accrual of the claim. Additionally, the Court finds that the claim, like the Notice of Intention to File a Claim, was sufficiently specific to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b).
Accordingly, the State's motion to dismiss the cause of action alleging that the State was negligent is DENIED.
The Court, however, reaches a different conclusion with regard to the allegations sounding in recklessness, deliberate indifference, and intentional conduct. In that regard, the Notice of Intention to File a Claim fails to allege any facts from which the State could reasonably infer how it acted in a manner which would support a cause of action sounding in recklessness, deliberate indifference or intentional conduct (see Johnson, 231 AD3d at 794). Thus, the Court finds that the Notice of Intention to File a Claim lacks sufficient detail to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b) and therefore the Notice of Intention to File a Claim did not extend the time within which to serve and file a claim as to said causes of action under Court of Claims Act §§ 10 (3) and 10 (3-b). Accordingly, said causes of action warrant dismissal as untimely. Additionally, the claim, like the Notice of Intention to File a Claim, fails to allege any facts from which the State could reasonably infer how it acted in a manner which would support causes of action sounding in recklessness, deliberate indifference, or intentional conduct and therefore does not meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b) (see id.).
Accordingly, the State's motion to dismiss the causes of action sounding in recklessness, deliberate indifference, and intentional conduct is GRANTED.
The State is directed to serve and file, within 40 days of the filed-stamped date of this Decision and Order, a Verified Answer addressed to the surviving causes of action alleged in the claim, in accordance with the Court's aforenoted findings and determinations.

Footnotes

Footnote 1:DOCCS refers to the New York State Department of Corrections and Community Supervision.

Footnote 2: Court of Claims Act § 10 (3-b) was not initially cited in the State's motion papers; however, it was cited in the State's Reply papers.